1  LIZETTE PEREZ GONZALEZ ON BEHALF OF THE ESTATE OF RUBY PEREZ
   220 Raye Avenue
2  Oakley, California 94561
   Telephone: (925) 848-8985
3  Facsimile: (510) 614-2930

4  In: Propria Persona

5  _____

6  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
   **COUNTY OF CONTRA COSTA – WAKEFIELD TAYLOR COURTHOUSE**

7

| | |
|---|---|
| LIZETTE PEREZ GONZALEZ ON BEHALF OF THE ESTATE OF RUBY PEREZ, ) ) ) PLAINTIFF, ) ) vs. ) ) JPMORGAN CHASE BANK, N.A. AS ) SUCCESSOR IN INTEREST TO BEAR ) STEARNS AND ENCORE CREDIT CORP.; ) SELECT PORTFOLIO SERVICING, INC.; ) ELECTRONIC REGISTRATION SYSTEMS, ) INC. (MERS) AND DOES 1 - 50, ) INCLUSIVE, ALL PERSONS UNKNOWN ) CLAIMING TO HAVE LEGAL, ) EQUITABLE, LIEN AND ESTATE ) AGAINST THE SUBJECT PROPERTY ) LOCATED AT 220 RAYE AVENUE IN ) OAKLEY, CALIFORNIA 94561, ) APN: 033-040-035-9, ) DEFENDANTS. ) ) ) ) ) ) ) ) | Case No: **UNLIMITED CIVIL COMPLAINT FOR BREACH OF CONTRACT:** 1. Business Tort/Unfair and Unethical Business Practices; 2. Breach of Covenant of Good Faith and Fair Dealings; 3. Slander of Title; 4. Alter Ego Liability; 5. Breach of Contract; 6. Unlawful Business Practices in Violation of Business and Professions Code § 17200 7. Predatory Lending/Violations of Truth In Lending Act ("TILA"); 8. Violation of California Civil Code Section 2923.6; 1572 *et seq.*; 9. Defamation; 10. False Light; 11. To Void or Cancel Assignment of Deed of Trust; and 12. Cancellation of a Voidable Contract Under Rev. & Tax Code §§ 23304.01, 23305A and Violation of Cal. Corp. Code §§ 191 (C)(7). |

Come now Lizette J. Gonzalez ("Plaintiff"), who brings this action for damages against

JPMORGAN CHASE BANK, N.A. AS SUCCESSOR IN INTEREST TO BEAR STEARNS

---

UNLIMITED CIVIL COMPLAINT FOR BREACH OF CONTRACT

1

EXHIBIT A

AND ENCORE CREDIT CORP.; SELECT PORTFOLIO SERVICING, INC.; ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) INC. and DOES 1 - 50, inclusive, all persons unknown claiming to have legal, equitable, lien and estate against the subject property located at 220 Raye Avenue, Oakley, California and DOES (1 to 50), ("Defendants"), hereinafter alternatively referred to as "each of them" hereby submit this complaint for damages and in support hereof would respectfully show unto the Court the following facts and matters, to-wit:

1. Plaintiff, Lizette J. Gonzalez hereinafter referred to as ("Plaintiff") is and at all times relevant a citizen of the State of California, whose current address is 220 Raye Avenue in Oakley, California 94561.

The property which is the subject matter of this action is located at 220 Raye Avenue in Oakley, California 94561, County of Clark ("Subject Property").

2. Plaintiff, Lizette J. Gonzalez lawfully acquired the subject property on or about July 2007. This loan was secured by Deeds of Trust and recorded as with MORTGAGE ELECTRONIC REGISTRATION SYSTEMS hereinafter, ["MERS"] as "Beneficiary" under the Deed of Trust and acting solely as a nominee for America's Wholesale Lender.

3. Plaintiff is informed, and believes and on that basis alleges that ENCORE CREDIT CORPORATION is, and at all times herein mentioned held the original 1st Deed of Trust to the subject property. Encore Credit Corporation was acquired by BEAR STEARNS, who was purchased by JPMORGAN CHASE BANK, N.A., who is the acquirer or all of Bear Stearns assets and liabilities. Servicing rights have recently been transferred to SELECT PORTFOLIO SERVICING, INC. at all times herein mentioned was the substituted servicer for the purposes of eventually co-facilitating foreclosure proceedings.

UNLIMITED CIVIL COMPLAINT FOR BREACH OF CONTRACT
2

EXHIBIT A

Upon learning that any one of these is an alter ego of the corporation, Plaintiff will seek leave to amend the complaint to allege such names, as soon as their identities are ascertained, or will move to amend the judgment to add such names as additional judgment debtors.

4. Plaintiff is informed and believes and thereon alleges that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., hereinafter "MERS" is a Delaware corporation with its principal place of business located at 1595 Spring Hill Road, Suite 310, Vienna, Virginia at all times herein mentioned became the successor in interest.

5. Defendant, JPMORGAN CHASE BANK, N.A. is a New York Corporation with its principal place of business located at 1111 Polaris Parkway in Columbus, Ohio 43240.

6. Defendant DOES 1 through 50 are sued under the fictitious names pursuant to Code of Civil Procedure Section 474.

7. Plaintiff is informed and believe and on that basis allege that each of the fictitiously named defendants is responsible in some manner for the wrongs and damages alleged below, and in so acting was functioning as the agent, servant, partner, and employee of the co-defendant, and in doing the actions mentioned below was acting within the course and scope of such authority as agent, servant, partner, and employee with the permission and consent to accomplish a specific task of behalf of the co-defendant. Plaintiff will amend this complaint to allege their true names and identities when ascertained.

8. Plaintiff is informed and believe and on that basis allege that at all material times herein alleged, defendants, and each of them was the agent, partner, joint venturer, and employee of each of the remaining defendants and in doing the things hereinafter alleged, each was acting within the scope of said agency, employment, partnership, and joint venture with the advance knowledge, acquiescence or subsequent ratification of each and every remaining defendant.

9. In the context of the acquisition of the subject property, defendants and each of them engaged in egregiously unfair and deceptive lending practices to steer Plaintiff into a loan that was destined to fail from inception.

10. Defendants used deceptive tactics in pushing Plaintiff into a complicated, risky, and expensive loan so that the companies could sell as many loans as possible to third (3rd) party investors.

11. Defendants and their employees and loan officers, underwriters, and branch managers, who were under intense pressure to process constantly increasing numbers of loans, misrepresented and obfuscated the fact that Plaintiff, who obtained the loan would experience dramatic increases in monthly payments. This business model generated windfall profits for said Defendants while causing irreparable economic injury, emotional trauma, and devastating residual impact on family security, relationship health, and physical/psychological wellness.

12. Concerning teaser rates, Defendants pushed these loans by emphasizing a low "Teaser" or initial rate often as low as 1% for pay option Adjustable Rate Mortgages (ARMS). Defendants sold their loans to third parties in the form of securities or whole loans often earning the most profits for riskier loans.

13. Defendants and each of them misrepresented and/or concealed the fact that ordinary homeowners, including Plaintiffs, who obtained their home loans, riddled with a Timed-Bomb (Adjustable Rate, Pick-A-Pay, and Negatively Amortizing Loans) engineered to systematically and dramatically increase monthly payments to the extent that the payments terms, conditions and provisions extended far beyond affordability. Consequently, Defendants and each of them did collaborate in executing a scheme to sabotage the lenders ability to pay thereby methodically pushing them into default status.

UNLIMITED CIVIL COMPLAINT FOR BREACH OF CONTRACT
4

EXHIBIT A

Defendants did willfully, deliberately and maliciously misrepresent ominous real estate market trends having full knowledge of the fact that home values all over the country were on the brink devastating reductions. With the benefit of minute-by-minute forecasting from an army of market analysts and advisors all over the nation, Defendants, and each of them led us to believe that present and future market trends were robust and we could depend on a prolonged on-going trend of escalating home values adding to a reliably predictable base of cumulative monthly equity.

14. The deceptive practices of defendants and each of them included, but were not limited to the following:

a) Violations of the Federal Truth In Lending Act [TILA provisions];

b) Violations of Home Owners Loan Act of 1933, 12 USC 1461;

c) Marketing complex loan products by emphasizing a very low "teaser rate" while misrepresenting the steep monthly payments, increased interest rates and risk of negative amortization;

d) Inducing Plaintiff to accept loans even thought the fair market value of the subject properties were substantially lower than the loan amount;

e) Inducing Plaintiff to accept an Adjustable Rate Mortgage note with an initial teaser interest rate which graduated upward to rate far beyond affordability without full disclosure;

f. Inducing Plaintiff to accept a loan at the initial teaser monthly payment without fully disclosing that the monthly payment would dramatically increase by 60% to 90% or more and with a prepayment penalty upwards to 115% without fully disclosing these terms, conditions, and provisions at the time of closing;

g. Suppression and concealments, failure to exercise an inherent "duty of care" to counsel, inform, or explain technically intricate and mechanically complex elements

UNLIMITED CIVIL COMPLAINT FOR BREACH OF CONTRACT

5

EXHIBIT A

of the contract/agreement;

h. In efforts to establish "clean hands standing", Defendants did intentionally and maliciously engineer a systemic process of deliberately removing knowledgeable loan officials from the loan signing procedure and replacing them with limited scope para-professionals (notaries/loan signers), therefore withholding critical information that would allow Plaintiff to make informed decisions and incorporate amendments and addendums with language to insure their best economic interest;

i. Charging excessive, unconscionable fees and preparing false financial statements;

j. Fabricating and submitting falsified loan application documents, including defective deeds;

k. Using low or no-documentation (liar loans) which allowed no verification of income;

l. Making Plaintiff sign a large stack of documents without providing adequate time to thoroughly read and mentally digest and weigh-out the ramification and economic consequences of the contract;

m. Concealing prepayment penalties;

n. Hiding total monthly payment obligations and proposed interest payments over the 360 month cycle of the loan;

15. Despite receiving numerous complaints from many homeowners that they did not understand the loan, defendants, ignored loan officers' deceptive practices and seemed to encourage dangerously loose underwriting practices.

16. As a direct and proximate result of the deceptive and unfair loan lending practices tens of thousands of borrowers, including the Plaintiffs, have been placed in an unaffordable loan engineered to self-destruct (foreclose).

17. In last hour desperation, Plaintiffs began to explore alternative means of retaining their home, including, but not limited to a loan modification or refinancing of the mortgage with the goal of a reduced mortgage payment.  Plaintiffs soon realized that no other financial institution could or would ever refinance such a loan due to the adjustable rate provisions and penalties.  Plaintiffs therefore sought a loan modification agreement with the defendant, SELECT PORTFOLIO SERVICEING, INC..

18. After discovering that no financial institution would refinance the loan, notwithstanding, defendants deceptive and predatory lending practices, Plaintiff contacted the defendant JPMORGAN CHASE BANK and requested that defendants assist regarding the mortgage in alignment with provisions of The Home Owners Loan Act of 1933 (**HOLA**) and the Obama administrations Federal Mortgage Assistance Programs.

19. Plaintiffs continued to exert efforts to oblige the defendants assistance in order to prevent foreclosure.  Plaintiff complied fully with all provisions of the HOLA and Federal Mortgage Assistance Programs except for those conditions which but for Defendants breaches and actions, was prevented from performing.

20. Plaintiffs attempted to enter into a "MAKING HOME AFFORDABLE MODIFICATION AGREEMENT" with defendant.  However, said agreement was never entered into after several representations from the Defendants that the principal loan amount would be adjusted in relation to present market value, Plaintiff would have a reduced monthly mortgage payment.

21. Defendants breached the parties' agreement in that they failed to memorialize the terms of the negotiated monthly payment in writing and while they were in negotiations, Defendants continued to foreclose by recording a Notice of Default without proper notice to Plaintiff.  The principal amount was not adjusted in relation to current market value;

EXHIBIT A

and the agreement required Plaintiff to make a substantially higher monthly mortgage payment.

22. Plaintiff has complied with all covenants except for those, but for the breaches, suppression, concealment and wrongful acts of defendants, he was prevented from performing.

23. In the mean time, Plaintiff has continued to plead with the defendants to comply with all relevant Federal Laws, California State Laws, Federal Mortgage Assistance programs as well as California Mortgage Assistance programs with the hope of enabling Plaintiffs to retain legal and physical ownership of the subject property. Notwithstanding Plaintiffs best efforts, in light of defendants' predatory loan practices enumerated herein and State and Federal provisions to retain legal and physical ownership of the subject property.

24. As a direct result of a national trend of highly exaggerated property values, a proliferation of extremely risky loan instruments, fraudulent inducement and coercion to enter into these debt traps, and the emergence of a banking culture of deception, misrepresentation, fraud and predatory entrapment strategies our nation has suffered a major economic collapse. In light of the local decline in the real estate industry, decreasing property values, bank closures, and the demise of major hedge fund and investment groups, the toll on Plaintiffs' financial condition had proven catastrophic. Needless to say, our overall economic injuries as described in the initial complaint are grossly underestimated.

25. Through a great deal of personal sacrifice, Plaintiffs' managed to maintain an history of consistent timely monthly mortgage payments until it became economically impossible to meet the monthly obligation. Although, Plaintiffs' current and future

equity value had continued on a downward slope, our cost of maintenance, upkeep, insurance, repairs, and taxes are constantly increasing.

26. It was further learned that defendants, and each of them have engaged in unethical and illegal business practices (Pick-A-Payment Loan Options) which is among the most egregious form of debt entrapment and predatory lending; Fraudulent Mortgage Note Origination; Fraudulent Concealment and Misrepresentation At Time of Origination; Patriot Act Violations/Unlawful Funding of Note; Improper Securitization of Loan/Note; Improper Assignment of Mortgage/Deed of Trust/MERS; and Breach of Contract Regarding Trial Modification Agreements. Plaintiffs' hereby alleges the following:

## FIRST CAUSE OF ACTION
## BUSINESS TORT/UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200. PREDICATED ON CALIFORNIA CIVIL CODE SECTION 2923.5 (BY AND ON BEHALF OF PLAINTIFFS' INDIVIDUALLY AGAINST EACH DEFENDANT)

27. Plaintiffs' incorporate by reference paragraphs 1 through 26 of this complaint as if fully set forth herein.

28. The Unfair Competition Law ("UCL"), codified at Bus. & Prof. Code § 17200 et seq., makes it unlawful for a business to engage in a "business act of practice" that is "unfair" or "unlawful" or "fraudulent." By virtue of their direct injuries as stated herein, and by virtue of statements identified above in regards to the requirements of California Code of Civil Procedure section 382, Plaintiffs', and each of them, have standing to sue and enforce remedies under the UCL.

29. An "unlawful" business activity includes "anything that can properly be called a business practice and that is at the same time forbidden by law." (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3rd 94, Ill.) Prohibited "unlawful" practices are any practices

9

EXHIBIT A

1  forbidden by law whether civil or criminal, federal, state, or municipal, statutory, regulatory, or
2  court-made. *(Farmers Ins. Exchange v. Super. Ct.* (1992) 2 Cal.4th 377,383.)

3
4
5   30. A business practice is "fraudulent" within the meaning of § 17200 et seq. if members
of the public are likely to be deceived by the business practice. *(Bank of the West v. Super. Ct.*
6  (1992) 2 Cal. 4th 1254; *Committee on Children's Television v. General Foods Corp.* (1983) 35
7  Cal. 3rd 197.)
8
9   31. The UCL authorizes injunctive relief to prevent unlawful, unfair, or fraudulent
10 business acts or practices, and both restitution and disgorgement of money or property
11 wrongfully obtained by means of such unfair competition. *(Cal.Bus. & Prof Code § 17203.)*
12  32. An action under the UCL may be brought by any person, corporation or association
13 or by any person acting for the interests of itself, its members, or the general public. *(Cal.Bus.
14 & Prof Code § 17204.)*
15  33. By failing to comply with the legal prerequisites for foreclosure proceedings,
16 defendants, and each of them, are engaging in unfair business practices such as to justify the
17 relief sought under the UCL.
18
19              **SECOND CAUSE OF ACTION**
20     **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
21  34. Plaintiffs' incorporate by reference paragraphs 1 through 33 of this complaint as
22 if fully set forth herein. Because the parties stood in the relationship of Consultant and Client,
23 Plaintiff was in a vulnerable and dependant position, of which Defendants were aware.
24 Defendants implicitly covenanted to deal with Plaintiff in good faith and fairly.
25
26  35. By reasons of the Defendants negligible acts as set forth above, Defendants, and
27 each of them, committed a breach of the implied covenant of good faith and fair dealing.
28

EXHIBIT A

As a direct, proximate and foreseeable result of said breach, Plaintiff suffer emotional distress, actual, special, and general damages as set forth in this complaint.

## THIRD CAUSE OF ACTION

### SLANDER OF TITLE

**[Filed against JPMORGAN CHASE BANK; and DOES 1 to 50 inclusive]**

36. Plaintiffs Mother, Ruby Perez (Deceased) was the fee simple owners of the subject property.

37. Defendants filed and recorded a Notice of Default and Election to Sell under the Deed of Trust. Said documents were recorded in the office of the Contra Costa County Recorder as instrument number 2008-0054656-00.

38. Plaintiffs had complied fully with all provisions of the HOLA and Federal Mortgage Assistance programs except for those conditions or covenants but for the breaches, suppression, concealment and wrongful acts of defendants, they were prevented from performing.

39. In the mean time, Plaintiffs had continued to plead with the defendants to comply with all relevant Federal Laws, State Laws, Federal Mortgage Assistance Programs as well as Oakley Mortgage Assistance programs with the hope of enabling Plaintiff to maintain possession of the home. Not withstanding Plaintiffs' best efforts, [and defendants' predatory loan practices enumerated above in violation of State and Federal provisions] to retain their home, defendants continued actions to take their home and caused to be recorded a Notice of Trustee Sale.

40. The recording of the Notice of Sales was in violation of statutory rules governing foreclosure sales, and the Trustee and beneficiary both failed to follow the statutory rules for a valid foreclosure under the California Civil Code and the intended or purported foreclosure sale

---

EXHIBIT A

is, therefore, void. The recording was also in violation of California State Civil Code of procedures.

41. Additionally, the trustee's sale notice is void because the requirements of Civil Code Section 2923.5 were not complied with by any of the Foreclosing Defendants.

42. An actual controversy presently exists between Plaintiffs and defendants over their respective rights and obligations regarding title to the subject property.

43. Plaintiffs seek a judicial declaration declaring that the recording of the Notice of Default and Notice of Sale constitutes a cloud of Plaintiffs' title; and the same be declared invalid and expunged.

## FOURTH CAUSE OF ACTION
## ALTER EGO LIABILITY

**[Filed against JPMORGAN CHASE BANK and DOES 1 to 50 inclusive]**

44. Plaintiffs re-alleges and incorporated by reference as though set forth fully at this point, each and every allegation contained in paragraphs 1 through 43.

45. On information and belief, defendants, SELECT PORTFOLIO SERVICES, INC. and MERS, are the alter ego of defendant JPMORGAN CHASE BANK, N.A. such that there is a unity of interest and ownership that the individuality or separateness, of such person or entities has either ceased or the facts are such that an adherence to the fiction of separate existence of these corporations would under the particular circumstances sanction a fraud or injustice and would promote and abuse of corporate privilege. Therefore, for any and all claims filed against any one of these defendants this Court or the Trier of fact should hold that they are all liable jointly to the Plaintiff for the claims alleged.

EXHIBIT A